IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JULIE MILLER,** | : | **CIVIL ACTION** |
|    **Plaintiff,** | : | |
| | : | |
|  v. | : | **No.: 20-cv-5342** |
| | : | |
| **ASHFORD TRS PHILLY, LLC,** | : | |
| *d/b/a Philadelphia Airport Embassy Suites*, | : | |
|    **Defendant.** | : | |

## MEMORANDUM OPINION

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**            February 22, 2022

   Presently pending before the Court is Defendant's Motion for Summary Judgment (Mot. for Summ. J., ECF No. 19), Plaintiff's Response thereto (Resp., ECF No. 20), and Defendant's Reply in support of its motion. (Reply, ECF No. 21). For the reasons that follow, Defendant's motion is **GRANTED**.

### I.  FACTS[1]

   From November 7, 2018 to November 10, 2018, Plaintiff stayed at the Philadelphia Airport Embassy Suites, a property operated by Defendant, as a business invitee attending a nursing convention. (Compl., ECF No. 20, Ex. A, at ¶ 8; Miller Deposition, ECF No. 19, Ex. C, at 37:11–23). On the evening of November 9, 2018, Plaintiff visited a sunken bar and lounge area located in the lobby of the hotel, where she and fellow nurse Robin Gardner, née Mourey, spent approximately fifteen to twenty minutes having non-alcoholic drinks and snacks. (Miller Depo. at

---

[1] As required at this stage of the proceedings, the Court views the evidence in the light most favorable to Plaintiff as the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)).

43:16–24, 44:7–8). Sometime between six and seven o'clock p.m., Plaintiff ascended a set of stairs leading from the bar area to a nearby single elevator. (Compl. at ¶ 9; Miller Depo. at 45:16–24, 46:1–3). While ascending the stairs, Plaintiff slipped and fell on a wet substance. (Compl. at ¶ 9; Miller Depo. at 48–60). After the fall, Plaintiff was unable to stand up, so she sat on the ground and leaned against a nearby wall. (Miller Depo. at 49:2–5, 51:6–9). While sitting, Plaintiff observed a liquid on the dark black marble floor, which made a trail from the stairway to the elevator bank. *Id.* at 44–48. Plaintiff could not identify the liquid, but stated that it appeared to be clear and guessed that it had either come from the pool area or that someone had spilled something. *Id.* at 52:19–24, 53:1. Plaintiff did not know how long the liquid had been on the floor. *Id.* at 68:15–19. Robin Gardner also observed the liquid, and described it as small wet spots in the shape of a footprint, about five to six inches in diameter. (Gardner Depo., ECF No. 19, Ex. F, at 16:21–24, 17:1–13, 23:12–20). Gardner was unable to identify the source of the liquid, and could not say how long it was present on the stairs. *Id.* at 22:18–24, 30:23–24, 31:1–2.

   After the accident, Kylan Rients, the hotel's executive housekeeper, was called to the scene and found Plaintiff sitting on the floor. (Rients Depo., ECF No. 19, Ex. E, at 30:6–12). Rients observed the trail of liquid, described it as penny-sized "driplets," and said it looked to him like someone from the bar area may have spilled liquid from a glass as they were walking. *Id.* at 33:2–11. Rients initially identified the liquid as water but later stated that he did not know what it was, and observed that there were no footprints or breaks in the trail except for where Plaintiff had slipped. *Id.* at 37:11–19, 38:16–20. He observed that the liquid had not dried, but did not know how long it had been present on the steps. *Id.* at 38:21–24, 39:1–12.

   Rients also testified generally regarding his experience as housekeeper. He stated that the hotel bar area and pool are both high-traffic areas, and that two lobby attendants monitor the lobby for spills on the weekends. *Id.* at 14–15. He stated that he had cleaned up many spills in the

general lobby area during his time working for the hotel, but noted that most spills occurred closer to the double elevator near the pool rather than the steps where Plaintiff fell. *Id.* Rients stated that the marble steps could be slippery when wet, and that there were never any mats or anti-slip devices used at the location where Plaintiff fell. *Id.* at 15:3–23. Rients also described the checklist the lobby housemen were instructed to complete during their shift. *Id.* at 17–20. The checklist provided guidelines as to which areas needed to be cleaned and when, but did not contain any specific item instructing housemen to look for spills or other substances on the floor. *Id.*; Checklist, ECF No. 20, Ex. D.

Immediately after her fall, Plaintiff reported experiencing severe pain and requiring the use of a wheelchair. (Miller Depo. at 65). She took over-the-counter pain medication but did not seek medical attention while in Philadelphia. *Id.* Upon returning home, Plaintiff underwent an MRI that revealed a tear of the left proximal hamstring. *Id.* at 69:1–11. She also suffered from retraction of all three tendons connected to the left tuberosity, and a thigh abscess related to the traumatic repair of the hamstring. (Compl., ECF No. 20, Ex. A, at ¶ 13).

## II.     PROCEDURAL HISTORY

Plaintiff commenced this action by filing a Complaint in the Court of Common Pleas of Philadelphia County against Ashford TRS Philly, LLC, Ashford Philly LP, and Ashford TRS Nickel, LLC on September 23, 2020. (Compl., ECF No. 20, Ex. A). The Complaint set forth the following four counts:

(1)     Negligence, premises liability claim against Ashford TRS Philly, LLC;

(2)     Negligence, premises liability claim against Ashford Philly LP;

(3)     Negligence, premises liability claim against Ashford Nickle; and

(4)     Negligence, premises liability claim against Embassy Suites Philadelphia.

3

*Id.* at Counts I-IV.

On October 27, 2020, Ashford TRS Philly removed the case from state court to federal court. (ECF No. 1). On April 7, 2021, the parties consented to my jurisdiction in this matter. (ECF No. 10). After Rule 16 and Rule 26(f) conferences, on August 30, 2021, the parties stipulated to the dismissal without prejudice of all defendants except Ashford TRS Philly. (ECF No. 18). On September 16, 2021, Defendant moved for summary judgment. (Mot. for Summ. J., ECF No. 19). On October 7, 2021, Plaintiff filed a Response in Opposition to the Motion for Summary Judgment (Resp., ECF No. 20), and Defendant filed a Reply on October 12, 2021. (Reply, ECF No. 21).

**III.   LEGAL STANDARD**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" if there is sufficient evidence from which a jury could find in favor of the non-moving party. *Id.* It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587-88 (citation omitted); *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987). If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party, and "all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

The moving party bears the initial burden of demonstrating that there is no genuine issue of

material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party carries this initial burden, the non-moving party must "come forward with specific facts showing there is a genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. The non-moving party must present something more than mere allegations, general denials, vague statements, or suspicions. *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992); *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). Instead, the non-moving party must present specific facts and "affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50. If the non-moving party has the burden of proof at trial, then that party must establish the existence of each element on which it bears the burden. *Celotex Corp.*, 477 U.S. at 322-23.

**IV.     DISCUSSION**

Plaintiff raises one claim of premises liability negligence against Defendant. (Compl., ECF No. 20, Ex. A, at Count I). To prevail on a negligence claim under Pennsylvania law, "a plaintiff 'must show that the defendant had a duty to conform to a certain standard of conduct, that the defendant breached that duty, that such breach caused the injury in question, and actual loss or damage.'" *Berrier v. Simplicity Mfg., Inc.*, 563 F.3d 38, 61 (3d Cir. 2009) (quoting *Phillips v. Cricket Lighters*, 841 A.2d 1000, 1008 (Pa. 2003)). As a guest at the hotel, Plaintiff was an invitee of Defendant at the time of the accident. *See* Restatement (Second) of Torts § 332 (defining "invitee" to include a "person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public."). According to the Restatement of Torts:

5

> A possessor of land is subject to liability for physical harm caused to invitees by a condition on the land if, but only if, he
>
>> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>>
>> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>>
>> (c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts § 343. If the harmful condition is traceable to the possessor or his agents' acts, then the plaintiff is not required to prove any notice in order to hold the possessor liable. *Moultrey v. Great A&P Tea Co.*, 422 A.2d 593, 530 (Pa. Super. Ct. 1980) (citing *Penn v. Isaly Dairy Co.*, 198 A.2d 322, 324 (Pa. 1964); *Finney v. G. C. Murphy Co.*, 178 A.2d 719 (Pa. 1962)). If the condition is one which the possessor knows has frequently recurred, the jury may find the possessor had actual notice of the condition. *Id.* at 531 (citing *Borsa v. Great Atl. & Pac. Tea Co.*, 215 A.2d 289, 292 (Pa. Super. Ct. 1965); *Clark v. Glosser Bros. Dept. Stores*, 39 A.2d 733 (1944)). If the condition is traceable to persons other than the possessor, the jury may not consider the possessor's ultimate liability in the absence of either actual notice or constructive notice of the condition. *Id.* (citing *Katz v. John Wanamaker, Inc.*, 112 A.2d 65, 67-68 (Pa. 1955); *Parker v. McCrory Stores*, 101 A.2d 377 (Pa. 1954); *Sheridan v. Horn & Hardart*, 77 A.2d 362 (Pa. 1951); *Borsa*, 215 A.2d at 292; *Potter v. Glosser Bros. Dept. Stores*, 22 A.2d 28, 29 (Pa. Super. Ct. 1941)). A possessor has constructive notice when "the condition existed for such a length of time that in the exercise of reasonable care the owner should have known of it." *Id.*; *Larkin v. Super Fresh Food Markets, Inc.*, 291 Fed.Appx. 483, 485 (3d Cir. 2008). Courts rely on a number of factors in determining the existence of constructive notice, including the number of persons using the premises, the frequency of such use, the nature of the harmful condition, its location on the premises, its probable cause, and the opportunity the defendant may have had to

remedy it. *Felix v. GMS, Zallie Holdings, Inc.*, 827 F.Supp.2d 430, 437 (E.D. Pa. 2011) (quoting *Hagan v. Caldor Dep't Stores*, No. 89-7810, 1991 WL 8429, at *4 (E.D. Pa. 1991)). Typically, the determination of constructive notice is made by the jury; however, where the evidence would require the jury to conjecture or guess how long the hazardous condition was present on the property, the determination must be made by the court. *Felix*, 827 F.Supp.2d at 437; *Craig v. Franklin Mills Assocs., L.P.*, 555 F.Supp.2d 547, 553 (E.D. Pa. 2008).

Taking the facts in the light most favorable to Plaintiff, Plaintiff has not established that Defendant had actual or constructive notice of the spilled liquid that caused her fall. Plaintiff argues that Defendant had an affirmative duty to monitor the location where she fell because it was a high-traffic area where spills frequently occurred. (Resp., ECF No. 20, at 9). She also argues that the hotel failed to sufficiently check the area for spills because the houseman's checklist did not include a specific item instructing them to look for spills. *Id.* at 10. In support of her argument, Plaintiff relies on *Kania v. Sbarro, Inc.,* No. 97-6863, 1998 WL 800320 (E.D. Pa. 1998). In *Kania*, the court denied summary judgment on a premises liability claim where the plaintiff slipped on a piece of lettuce that had been dropped near a food buffet. *Id.* The plaintiff testified that the lettuce had turned brown, which the court found could lead to an inference that it had been on the floor for a sufficient period of time for the defendant to have constructive notice of the hazard. *Id.* at *2. Additionally, the restaurant's manager was explicitly required to inspect the floor for spills every five to ten minutes, and the plaintiff had observed the area prior to her fall and had not seen any employees near the buffet. *Id.* The court found that the jury could find actual notice on the part of the defendant because the evidence of the required frequent inspections could allow for a reasonable inference that the defendant knew of the likelihood food would be dropped on the floor. *Id.* Finally, the court found that, if the opinion of the plaintiff's expert was credited, a jury could reasonably find that the defendant itself had created the dangerous condition

7

by utilizing a slippery surface without matting for a floor onto which it was reasonably foreseeable that food and other slippery substances would fall. *Id.*

The facts of this case are distinguishable from *Kania*. First, regarding actual notice, there is no evidence that the type of spill at issue here was one which Defendant knew had frequently recurred. Kylan Rients, Defendant's former executive housekeeper, testified in his deposition that the area where Plaintiff fell was *not* where most spills occurred; rather, most spills happened in a different area closer to the pool and the double elevators. (Rients Depo., ECF No. 19, Ex. E, at 14–15). Rients elaborated that, while he'd cleaned up some spills on the stairs where Plaintiff fell in the past, spills did not regularly occur in that location. *Id.* at 14:13–17, 15:7–12. Rients further stated that guests did not need to use those stairs to go from the pool to their rooms, and indeed guests using those stairs after being at the pool was an infrequent occurrence. *Id.* at 13:13–24, 14:1–8. While Plaintiff asserts that Defendant should have known spills were likely to occur in this area, Plaintiff has not presented any evidence to this effect; the only evidence regarding the likelihood of spills on these particular steps is the testimony of Rients, who stated that spills on the steps did not occur regularly. *Contrast Falcone v. Speedway LLC*, 2017 WL 220326, at *3 (E.D. Pa. 2017) (finding dispute of material fact existed where defendant's employee testified that she was aware of recurring spills). Additionally, unlike in *Kania*, there is no evidence here that Defendant required its employees to frequently check this area for spills; in fact, as Plaintiff points out, the houseman's checklist does not contain any reference to checking for spills, and the attendants assigned to monitor the lobby were stationed near the restrooms and the pool area, not the stairs. (Houseman's Checklist, ECF No. 20, Ex. C; Rients Depo., ECF No. 19, Ex. E, at 14:24, 15:1–6). Thus, there is no evidence from which it could be reasonably inferred that Defendant knew spills had frequently occurred on these steps. And unlike in *Kania*, Plaintiff has not put forth any evidence or expert opinion indicating that the area where Plaintiff fell would have

required anti-slip matting. Therefore, Plaintiff has not put forth any evidence to show that the condition which caused her fall was one which Defendant knew had frequently recurred, and a jury could not infer that Defendant had actual notice of the condition.

Since Plaintiff has not established actual notice, the inquiry then turns to whether Plaintiff has shown sufficient evidence of constructive notice. Here, Plaintiff has not offered any evidence to show how long the liquid was present on the steps where she fell. She testified that she did not observe the area prior to the accident and could only speculate as to the source of the liquid. No one else observed how long the liquid was on the steps, and no one saw any of Defendant's employees in or near the area before Plaintiff's fall. Those who observed the liquid described it as clear, rather than muddy or dirty, and there were no tracks present in it except for those caused by Plaintiff. In contrast to the browning of the lettuce in *Kania*, here there is no evidence in the record providing any sort of clue as to how long the liquid was on the floor. *See David v. Pueblo Supermarket,* 740 F.2d 230, 234 (3d Cir. 1984) ("[T]he mere presence of the foreign substance does not establish whether it had been there a few seconds, a few minutes, a few hours or even a few days before the accident."). Accordingly, Plaintiff has failed to establish that the hazard existed long enough for Defendant to have constructive notice of it. *See Estate of Swift v. Northeastern Hosp. of Philadelphia*, 690 A.2d 719, 722 (Pa. Super. Ct. 1997) (finding no constructive notice where plaintiff who slipped on spilled water presented no evidence as to how or when the water arrived on the floor).

Finally, Plaintiff's argument that Defendant had a duty to monitor the area and that the houseman's checklist was deficient for not providing instructions to check for spills is unavailing. The adequacy of any monitoring policy is only relevant *after* it has been established that Defendant had constructive notice of the hazardous condition. *Cole v. Walmart, Inc.*, 2021 WL 2695554, at *4 (E.D. Pa. 2021) (citing *Felix*, 827 F. Supp. 2d at 440; *Est. of Swift*, 690 A.2d at

9

722). "In order for Defendants to fail to exercise reasonable care with respect to a duty, Defendants must owe a duty in the first place." *Felix*, 827 F. Supp. 2d at 440. Since there is no evidence showing how long the liquid that caused Plaintiff's spill was on the floor, Plaintiff has not shown that Defendant had constructive notice of the condition. Any inquiry into the adequacy of Defendant's monitoring procedures would be irrelevant, and therefore this argument is insufficient to defeat summary judgment.

Accepting Plaintiff's facts as true, Plaintiff has failed to establish that Defendant had notice of the hazardous condition which caused her fall. Accordingly, the Court grants Defendant's motion for summary judgment.

## V.   CONCLUSION

For the foregoing reasons, the Court grants summary judgment in favor of Ashford TRS Philly, LLC on all claims against it.

BY THE COURT:

 /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge